UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:06CV-224-R

MARY MOORMAN, in her capacity as
Administratrix of the estate of OBELIA BARNETT                                    PLAINTIFF

v.

HQM OF SPENCER COUNTY, INC., d/b/a
VALLEY VIEW HEALTH CARE AND
REHABILITATION CENTER                                                            DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on motion to remand (Dkt. # 6) of Plaintiff Mary

Moorman.  Defendant HQM of Spencer County, Inc. ("HQM") responded (Dkt. # 10) and

supplemented its response (Dkt. # 14), and Plaintiff replied (Dkt. # 15).  This matter is now ripe

for adjudication.  For the reasons that follow, the Court **GRANTS** Plaintiff's motion to remand.

## BACKGROUND

Plaintiff Moorman filed this action for judgment in Jefferson Circuit Court, Louisville,

Kentucky, seeking judgment against HQM for injuries allegedly resulting from the treatment that

her mother, Obelia Barnett, received while living at Defendant's nursing home.  Her complaint

contained the following allegations.  It alleges that Ms. Barnett was a patient at a facility known

as Valley View, which was operated by HQM, from approximately September 2000 until March

2004, when she was discharged.  (Complaint, Exhibit A to Dkt. # 1, at ¶ 3.)  It alleges that the

nursing home, " by and through its agents, servants and employees, deviated from the generally

accepted standard of care in [its] treatment of the Plaintiff's decedent" and that it "violated the

applicable Kentucky and federal statutes defining the rights of Kentucky nursing home residents

1

... including[,] but not limited to[,] KRS 216.515." (*Id.* at ¶¶ 4,5.)  As a result of these actions, Plaintiff asserts, Ms. Barnett "incurred medical expenses and endured great pain and suffering of body and mind until her death on April 25, 2004." (*Id.* at ¶ 6.)  Also as a result, Plaintiff asserts that she personally "has incurred other damages including[,] but not limited to[,] medical expenses, funeral and burial expense, as well as the destruction of the decedent's earning capacity, loss of benefits and loss of companionship." (*Id.* at ¶ 7.)  "Plaintiff and the estate also assert all derivative claims arising from such damages herein." (*Id.*)  The complaint "seeks recovery of ... damages under the Kentucky Wrongful Death Statute, the Kentucky Consumer Protection Act, the Kentucky and federal nursing home patients' Bill of Rights [*sic*], and any other applicable federal statutes and common law." (*Id.* at ¶ 8.)

On May 9, 2006, HQM removed the case to this court, asserting jurisdiction in federal court on grounds that (1) the Complaint contains a federal question in that Plaintiff seeks relief for alleged violations of federal law; and (2) the federal courts have diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff challenges both bases in her Motion to Remand.

## DISCUSSION

The first assertion of federal jurisdiction rests on the grant of jurisdiction set forth in 28 U.S.C. § 1331, which provides that "...district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Defendant asserts that Plaintiff's Complaint contains claims that would provide federal question jurisdiction in that it alleges violations of "applicable Kentucky and federal statutes" and "seeks recovery of ... damages under ... the Kentucky and federal nursing home patients' Bill of Rights, and other

applicable federal statutes and common law."[1]  (Complaint, at ¶¶ 5 and 8.)  Plaintiff states that

the references to federal law do not provide a cause of action under federal law because they are

intended to point to 42 U.S.C. § 1396r(b)(4), which is a part of the federal Social Security statute

that sets forth requirements for nursing homes which receive federal funds via grants to state

governments. Plaintiff argues that this statute provides no private cause of action for a violation

of its provisions, and that reference to it therefore would not create federal jurisdiction.

Defendant does not dispute this assertion, and a number of courts have so held.  *See Brogdon ex*

*rel. Cline v. National Healthcare Corp.*, 103 F.Supp.2d 1322, 1330-1331 (N.D.Ga. 2000)

(collecting cases).  Therefore, the Court finds that, at the time of removal, the complaint did not

contain a claim that would give rise to federal jurisdiction.

With respect to Defendant's claim of diversity jurisdiction, the resolution of this issue

turns on the Defendant corporation's citizenship.  It is apparently undisputed that Plaintiff's

decedent was a citizen of Kentucky for diversity purposes; the question, then, is whether the

Defendant is a citizen of Kentucky as well.  If so, of course, no diversity jurisdiction exists and

the case must be remanded to Jefferson Circuit Court.

In general, a corporation may be a resident of two states for diversity purposes: (1) its

state of incorporation; and (2) the state which contains its principal place of business.  *Gafford v.*

*General Elec. Co.*, 997 F.2d 150, 161 (6th Cir. 1993).  The parties agree that Defendant is

---

[1]As an initial matter, the Court notes that Plaintiff has filed a motion seeking to amend
her complaint; inasmuch as she does so in a way that removes these references to federal law,
such an amendment cannot affect the determination of the remand motion because the issue is
whether federal jurisdiction existed *at the time the case was removed to federal court.  See
Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (citing *Pullman Co. v. Jenkins*, 305
U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed. 334 (1939)).

3

incorporated in the state of Delaware.  However, Plaintiff argues that Defendant's principal place

of business is in Kentucky, and that it is therefore a citizen of Kentucky for the purpose of

assessing diversity jurisdiction.  Defendant argues that its principal place of business is located

in Florida, and that the Court therefore properly possesses diversity jurisdiction.

      As the *Gafford* court explained: "'The question of a corporation's principal place of

business is essentially one of fact, to be determined on a case-by-case basis, taking into account

such factors as the character of the corporation, its purposes, the kind of business in which it is

engaged, and the situs of its operations.'" *Id.* (quoting *Northeast Nuclear Energy Co. v. General

Elec. Co.*, 435 F.Supp. 344, 345 (D.Conn. 1977).  By way of providing structure to courts'

considerations of these various factors, the *Gafford* court went on to "direct courts in this circuit

to employ the total activity test." *Id.* at 163.  The *Gafford* court described the "total activity test"

as a test that "encompasses [two other tests, the "nerve center" test and the "place of activity"

test,] as it recognizes that the approach to determining a corporation's principal place of business

will vary with the facts of each case." *Id.* at 162.  "The 'nerve center' test emphasizes the situs

of corporate decision-making authority and overall control." *Id.* (citing *Scot Typewriter Co. v.

Underwood Corp.*, 170 F.Supp. 862, 864-65 (S.D.N.Y.1959)).  "The 'corporate activities'/'place

of activity ' test emphasizes the location of production activities or service activities." *Id.* (citing

*Kelly v. United States Steel Corp.*, 284 F.2d 850, 854 (3d Cir. 1960).  As the Court's sister court

in *NCR Corp. v. Garner Group, Inc.* observed:

> While each situation is fact-specific, certain generalizations have been made.
> These were canvassed in *J.A. Olson Co. v. City of Winona*, 818 F.2d 401 (5th
> Cir.1987), in a section which the Sixth Circuit excerpted in its opinion in *Gafford*.
> First, the principal place of business of a far-flung corporation will generally be
> its nerve center. *Olson*, 818 F.2d at 409 (citation omitted). Second, the principal
> place of business of a corporation with significant administrative authority and

4

activity in one State and lesser executive offices but principal operations in another State is generally the district of the former. *Id.* (citation omitted). Third, the principal place of business of a corporation with its corporate headquarters in one State and its single activity in another State will generally be in the State of its operations. *Id.* (citation omitted).

1997 WL 1774881, *5 (S.D. Ohio 1997) (*see also Rapier v. Union City Non-Ferrous, Inc.*, 197 F.Supp.2d 1008, 1013 (S.D.Ohio 2002) and *State Auto Financial Acquisition Corp. v. State Auto. Mut. Ins. Co.*, 289 F.Supp.2d 906, 910 (S.D. Ohio 2003)).

The parties agree that Defendant's "principal business office" is located in Florida. (Information from Kentucky Secretary of State's office, Exh. 3 to Dkt. # 6.). Defendant further asserts that: (i) its officers all live and work in Florida; (ii) its parent company is also located in Florida; (iii) it does not own property in Kentucky, but leases its nursing home; (iv) "[i]ts primary asset is its accounts receivable[,] which should be attributed to its business office in Florida;" and (v) "its policy decisions emanate from Florida." (Defendant's Supplemental Response, Dkt. # 14, at 1-2). It admits, however, that "the bulk of its employees work in Kentucky." (*Id.* at 2). Based on these descriptions, the Court finds that HQM fits the third category described in the *Olson* case quoted above: its corporate headquarters are located in Florida, but its single activity (operating the nursing home) is in Kentucky. Therefore, the Court finds that HQM is a citizen of Kentucky for diversity purposes.

## CONCLUSION

For the reasons outlined above, this Court concludes that it did not have jurisdiction over the claim in question at the time of removal. The Court therefore **GRANTS** Plaintiff's motion to remand. An appropriate order shall issue.